AO 93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>A black Apple iPhone without a case with large cracks<br>on the back and measuring 2.5 inches wide by 5.5 inches tall. | Case No.  21-402 MB |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

### As further described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before December 30, 2021 *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

N/A  ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 12-16-2021 @ 3.30 p.m.    _Michelle Burns_

                                      *Judge's signature*

City and state: Phoenix, Arizona               Honorable MICHELLE H. BURNS, U.S. Magistrate Judge
                                      *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black Apple without a case, with large cracks on the back, and which measures 2.5 inches wide by 5.5 inches tall (**Subject Cellular Telephone**). The IMEI number of the **Subject Cellular Telephone** is unknown, as the phone is locked. The **Subject Cellular Telephone** is currently located in an ATF storage locker at 40 N. Central Ave. Suite 900, Phoenix Arizona, 85003.

This warrant authorizes the forensic examination of the **Subject Cellular Telephone** for the purpose of identifying the electronically stored information described in Attachment B.




**ATTACHMENT B**

*Property to be seized*

1.      Any records and information found within the digital contents of the **Subject Cellular Telephone** that relate to the offense of Knowingly Make a False Statement to be Kept in the Records of a Person Licensed Under Chapter 44 of Title 18, United States Code in violation of Title 18, United States Code, Section 924(a)(1)(a), including:

    a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of firearms, firearms parts or accessories, or ammunition;

    b.  all information related to buyers or sources of firearms, firearms parts or accessories, or ammunition (including names, addresses, telephone numbers, locations, or any other identifying information);

    c.  all bank records, checks, credit card bills, account information, or other financial records;

    d.  all information regarding the receipt, transfer, possession, transportation, or use of proceeds of firearms, firearms parts or accessories, or ammunition;

    e.  any information recording schedule or travel;

    f.  records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

    g.  evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

      h.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

      i.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

      j.  contextual information necessary to understand the evidence described in this attachment.

2.    Any records and information found within the digital contents of the **Subject Cellular Telephone** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| In the Matter of the Search of | |
|---|---|
| A black Apple iPhone without a case with large cracks on the back and measuring 2.5 inches wide by 5.5 inches tall. | Case No. 21-402 MB |
| | **(Filed Under Seal)** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 924(a)(1)(A) | False Statement in the Purchase of a Firearm |

The application is based on these facts:

### See attached Affidavit of Special Agent Daniel Kolodziej

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Coleen Schoch

_____
Applicant's Signature

Daniel Kolodziej, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed ~~in my presence.~~ telephonically.

Date: 12-16-2021

_____
Judge's signature

City and state: Phoenix, Arizona

Honorable MICHELLE H. BURNS, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black Apple without a case, with large cracks on the back, and which measures 2.5 inches wide by 5.5 inches tall (**Subject Cellular Telephone**). The IMEI number of the **Subject Cellular Telephone** is unknown, as the phone is locked. The **Subject Cellular Telephone** is currently located in an ATF storage locker at 40 N. Central Ave. Suite 900, Phoenix Arizona, 85003.

This warrant authorizes the forensic examination of the **Subject Cellular Telephone** for the purpose of identifying the electronically stored information described in Attachment B.




**ATTACHMENT B**

*Property to be seized*

1.      Any records and information found within the digital contents of the **Subject Cellular Telephone** that relate to the offense of Knowingly Make a False Statement to be Kept in the Records of a Person Licensed Under Chapter 44 of Title 18, United States Code in violation of Title 18, United States Code, Section 924(a)(1)(a), including:

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of firearms, firearms parts or accessories, or ammunition;

   b. all information related to buyers or sources of firearms, firearms parts or accessories, or ammunition (including names, addresses, telephone numbers, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records;

   d. all information regarding the receipt, transfer, possession, transportation, or use of proceeds of firearms, firearms parts or accessories, or ammunition;

   e. any information recording schedule or travel;

   f. records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

   g. evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

      h.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

      i.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

      j.  contextual information necessary to understand the evidence described in this attachment.

2.    Any records and information found within the digital contents of the **Subject Cellular Telephone** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Daniel Kolodziej, being first duly sworn, hereby deposes and states as follows:

### I.   INTRODUCTION AND AGENT BACKGROUND

1.     Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone: a black Apple without a case, with large cracks on the back, and which measures 2.5 inches wide by 5.5 inches tall, further described in Attachment A (hereinafter "**Subject Cellular Telephone**"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, and have been since March 2020.

3.     I am presently a member of ATF Phoenix Field Division Group II, Gangs and Violent Crimes. I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center, as well as Special Agent Basic Training for the ATF.

4.     Prior to my employment with the ATF, I was employed by the Department of Homeland Security, where I worked as a Border Patrol Agent for one year. While at DHS, I received specialized training at the Federal Law Enforcement Training Center. As a Border Patrol Agent, I was responsible for tracking and apprehending illegal immigrants.

5.     Prior to my time as a Border Patrol Agent, I worked as a police officer for the towns of St. John and Dyer, Indiana for eight years. As a police officer I enforced Indiana State Laws and conducted investigations into a variety of violations. For the last five years of my career as a local police officer, I was assigned to the Northwest Regional SWAT team as an operator on Entry Team One. As a SWAT Operator, I was tasked with

serving high-risk arrest and search warrants. I have apprehended many dangerous criminals and responded to many barricaded situations with and without hostages.

6. The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience, information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers, and analysis of public records.

7. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all relevant facts known to law enforcement officers.

## II.  **BASIS FOR PROBABLE CAUSE**

8. In August 2021, SA Kolodziej was made aware of suspicious firearms purchases being made by Daniel Antonio HERRERA-CAMACHO. HERRERA-CAMACHO previously purchased a Barrett .50 caliber rifle and an Ohio Ordnance M240 7.62x39 rifle. Both firearms are known to commonly purchased for purpose of trafficking southbound across the international border to arm drug cartels. These types of firearms are in high demand by drug cartels. SA Kolodziej therefore began to investigate the firearm purchases made by HERRERA-CAMACHO.

9. SA Kolodziej spoke with staff at Casa Grande Jewelry and Pawn, a federal firearms licensee (FFL). Casa Grande Jewelry and Pawn informed SA Kolodziej that HERRERA-CAMACHO had purchased ten firearms via websites such as Gunbroker.com and Armslist.com, and had those firearms shipped to Casa Grande Jewelry and Pawn. The approximate value of these firearms, purchased from February to September 2021, is $60,000.00.

10.     ATF SAs queried the Arizona Department of Economic Security for HERRERA-CAMACHO's employment and wage earnings. HERRERA CAMACHO's last reported income was reported $5,481 in 4th quarter of 2020 from Olam Cotton. He also had an active claim for unemployment insurance at that time.

11.     A United States Border Patrol Agent queried law enforcement databases for HERRERA-CAMACHO's Mexico to United States crossing history. Your affiant observed that each time that HERRERA-CAMACHO purchased a firearm, he had a crossing from Mexico to the United States either that day or the day following.

12.     On September 17, 2021, SA Kolodziej was contacted by Casa Grande Jewelry and Pawn and informed of a recent delivery for HERRERA-CAMACHO. SA Kolodziej subsequently determined HERRERA-CAMACHO had purchased a Vector Arms RPD rifle via Gunbroker.com and had had it shipped to Casa Grande Jewelry and Pawn.

13.     Casa Grande Jewelry and Pawn agreed to contact SA Kolodziej to advise when HERRERA-CAMACHO came in to pick up the Vector Arms RPD. After HERRERA-CAMACHO failed pick up the rifle on either September 17 or 18, SA Kolodziej set up a plan to surveil both Casa Grande Jewelry and Pawn and HERRERA-CAMACHO's residence.

14.     On September 20, 2021, ATF SAs and ATF Task Force Officers (TFO), assisted by the Casa Grande Police Department (CGPD), conducted surveillance on Casa Grande Jewelry and Pawn and on HERRERA-CAMACHO's residence, which is also in Casa Grande, Arizona.

15.     At approximately 9:09 a.m., Casa Grande Pawn and Jewelry advised your affiant that HERRERA-CAMACHO was just notified he had been approved to purchase the firearm and informed it would be ready for pick up. Casa Grande Pawn and Jewelry

further advised that HERRERA-CAMACHO had stated that he would be in before noon to pick up the firearm.

16.     At approximately 10:45 a.m., surveillance personnel observed a white Chevrolet Malibu depart from HERRERA-CAMACHOs residence. Surveillance personnel did not follow the white Cheverolet Malibu. At approximately 11:24 a.m., surveillance personnel observed a white Chevrolet Malibu (AZ CHT5122) arrive at the Casa Grande Pawn and Jewelry. Surveillance personnel observed as HERRERA-CAMACHO exited the driver's seat of the Chevrolet Malibu, wearing jeans, a blue button-up style shirt and a dark colored baseball hat. HERRERA-CAMACHO proceeded to walk into Casa Grande Jewelry and Pawn. The white Chevrolet Malibu (AZ CHT5122) is registered to HERRERA-CAMACHO's wife.

17.     Shortly after HERRERA-CAMACHO entered the pawn shop, SA Kolodziej was contacted by Casa Grande Jewelry and Pawn, advising HERRERA-CAMACHO was in the store wearing blue jeans, a blue shirt, and a baseball hat.

18.     At approximately 11:49 a.m., HERRERA-CAMACHO was seen exiting Casa Grande Pawn and Jewelry with an unboxed rifle and an additional cardboard box. Surveillance personnel continued to observe HERRERA-CAMACHO as he loaded the firearm and box into the rear seat of the Chevrolet Malibu. HERRERA-CAMACHO then entered the driver's seat of the Chevrolet Malibu and began to exit the parking lot.

19.     Throughout the entire operation, surveillance personnel maintained visual surveillance of HERRERA-CAMACHO. Surveillance personnel followed HERRERA-CAMACHO as he went to a gas station, then a Panda Express, followed by Culver's.

20.     After HERRERA-CAMACHO exited the Culver's parking lot, CGPD performed a traffic stop on HERRERA-CAMACHO at the intersection of Florence Boulevard and Hacienda Road. CGPD Officers advised HERRERA-CAMACHO had committed several movement violations, which prompted them to perform a traffic stop.

21.     SA Kolodziej approached the traffic stop and contacted HERRERA-CAMACHO. Prior to speaking with HERRERA-CAMACHO, SA Kolodziej activated his digital audio recorder to memorialize the interview. A copy of the recording was later placed into evidence. SA Kolodziej identified himself as a Special Agent with ATF and asked if HERRERA-CAMACHO would be willing to speak with him. HERRERA-CAMACHO asked if he was under arrest, to which SA Kolodziej said no. HERRERA-CAMACHO asked if he needed an attorney, which SA Kolodziej stated, that was not something he could advised him on. HERRERA-CAMACHO then asked if he were free to leave, to which your affiant and CGPD both said no.

22.     SA Kolodziej asked HERRERA-CAMACHO about the firearm that he had just purchased. SA Kolodziej asked HERRERA-CAMACHO what type of firearm it was, which he replied, "an RPD." SA Kolodziej asked if HERRERA-CAMACHO had purchased any other firearms, which HERRERA-CAMACHO stated "yes." SA Kolodziej asked when the last time HERRERA-CAMACHO purchased a firearm was, and he stated a few weeks ago. SA Kolodziej asked HERRERA-CAMACHO where he had purchased the other firearm from and inquired what type of firearm it was. HERRERA-CAMACHO advised it was another RPD and stated it was from a store somewhere. SA Kolodziej asked HERRERA-CAMACHO if he owned any other firearms, and if so, where did he keep them. HERRERA-CAMACHO advised he did own other firearms and stated they were secured somewhere at an undisclosed location. HERRERA-CAMACHO stated he no longer wished to speak with agents and advised for all other questions to be referred to his attorney. SA Kolodziej advised it was HERRERA-CAMACHO's right to request an attorney be present before any further questioning and ended the interview. Throughout the conversation HERRERA-CAMACHO was agitated and short with agents.

23.     SA Kolodziej informed HERRERA-CAMACHO that ATF would be seizing the RPD firearm, the magazines, and HERRERA-CAMACHO's cell phone. SA Kolodziej

asked HERRERA-CAMACHO if there were any other firearms in the vehicle. HERRERA-CAMACHO advised there was a 1911 under the driver's seat.

24.     SA Kolodziej located a Sig Sauer 1911, serial number 54SE015056, under the driver's seat. SA Kolodziej observed the firearm to be loaded with one round in the chamber. SA Kolodziej rendered the firearm safe and subsequently secured it. SA Kolodziej in total seized one Sig Sauer 1911, one Vector Arms RPD, six drum magazines, eight rounds of .45 ACP ammunition, 59 rounds of 7.62x39 ammunition and one black Apple iPhone.

25.     SA Kolodziej informed HERRERA-CAMACHO of all the items that would be seized. HERRERA-CAMACHO confirmed that the iPhone located inside the vehicle was his current and only phone, and HERRERA-CAMACHO then read and signed ATF Receipt for Property and Consent to Forfeiture forms 3400.23 and 3400.1.

26.     HERRERA-CAMACHO declined to provide SA Kolodziej with the passcode for his cellular phone, and SA Kolodziej is therefore not able to access the phone to obtain its serial number or IMEI.

27.     The **Subject Cellular Telephone** is currently in the lawful possession of ATF. HERRERA-CAMACHO signed ATF Receipt for Property and Consent to Forfeiture forms 3400.23 and 3400.1, on which his cell phone was one of the listed items. Therefore, while ATF might already have all necessary authority to examine the device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

28.     I believe that probable cause exists and supports the issuance of a search warrant to search the **Subject Cellular Telephone** for the items set forth in Attachment B hereto. I believe that the **Subject Cellular Telephone** contains evidence relating to the commission of the offense of Knowingly Make a False Statement to be Kept in the Records

6

of a Person Licensed Under Chapter 44 of Title 18, United States Code in violation of Title 18, United States Code, Section 924(a)(1)(a).

29.     The **Subject Cellular Telephone** was seized from a vehicle registered to HERRERA-CAMACHO's wife, and which HERRERA-CAMACHO was found driving. HERRERA-CAMACHO had the **Subject Cellular Telephone** with him in the vehicle when he picked up the RPD rifle from the Casa Grande Jewelry and Pawn.

30.     Based upon my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I am aware that individuals who purchase firearms using websites such as Gunbroker.com and Armslist.com often use their cellular telephones to access those websites and to call, e-mail, and message individuals selling firearms on those websites.

31.     Based upon my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I am aware that individuals who purchase firearms using websites such as Gunbroker.com and Armslist.com often use their cellular telephones to access those websites and to call, e-mail, and message individuals selling firearms on those websites.

32.     Based upon my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I am aware that individuals acting in concert to illegally procure and traffic firearms must communicate with one another to coordinate their respective activities.

33.     ATF will search the **Subject Cellular Telephone** for text messages, phone calls, and social media messages between HERRERA-CAMACHO and other individuals regarding the purchase of the seized RPD rifle, as well as HERRERA-CAMACHO's previous purchase of a Barrett .50 caliber rifle, an Ohio Ordnance M240 7.62x39 rifle, and other firearms.

34.     The **Subject Cellular Telephone** has remained in ATF custody since the time of its seizure on September 20, 2021. The **Subject Cellular Telephone** is currently stored in the ATF Phoenix Field Division evidence storage vault, located in Phoenix, Arizona. Based on your Affiants training and experience, I know that the **Subject Cellular Telephone** has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the **Subject Cellular Telephone** first came into the possession of the ATF.

## III.     ITEMS TO BE SEIZED

35.     Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the **Subject Cellular Telephone**.

36.     Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

37.     Firearms traffickers commonly use cellular telephones to communicate with other firearm traffickers and customers about firearm-related activities using telephone calls, text messages, email, social media, and other internet- and application-based communication forums. Moreover, firearms traffickers commonly use other capabilities of cellular telephones to further their firearms trafficking and money laundering activities. Therefore, evidence related to firearm trafficking activity and money laundering activity is likely to be found on the **Subject Cellular Telephone**.

38.     As previously set forth in this Affidavit, the target of this investigation has used electronic storage media to send messages and to post advertisements regarding potential purchases and sales of firearms. By training and experience, your Affiant also knows that telephones are commonly used to further firearms trafficking. Cellular

telephones are the primary source of communication for firearms traffickers. Therefore, your Affiant believes that evidence of criminal activity, including information regarding straw purchasing by the subject, information regarding straw purchasing by others on behalf of the subject, and potential current locations of firearms that have traveled out of legal commerce into illegal commerce, will be found on **Subject Cellular Telephone**.

39.     In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the **Subject Cellular Telephone**.

## IV.     DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

40.     As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the **Subject Cellular Telephone**. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

41.     *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the **Subject Cellular Telephone** for at least the following reasons:

a.      Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was

achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

      b.    Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system (GPS) information.

      c.    Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

      d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    42.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that

establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the **Subject Cellular Telephone** because:

a.      Data in a cellular telephone can provide evidence of a file that was in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a

11

particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

      c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

      d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.     Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

43.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the **Subject Cellular Telephone**, including the use of computer-assisted scans.

44.   *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.   CONCLUSION

1.   Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of the offense of Knowingly Make a False Statement to be Kept in the Records of a Person Licensed Under Chapter 44 of Title 18, United States Code in violation of Title 18, United States Code, Section 924(a)(1)(a), are likely to be found in the contents of the **Subject Cellular Telephone** described in Attachment A.

Special Agent Daniel Kolodziej, ATF

Subscribed and sworn to ~~before me~~ this _16_ day of December, 2021.

HONORABLE MICHELLE H. BURNS
United States Magistrate Judge

13